Good morning, and may it please the Court, Andrew Kennedy on behalf of James Postlethwaite. I intend to reserve three minutes for rebuttal. Okay, I'll try and help you. Your Honors, the issue before this Court is whether James Postlethwaite was prejudiced through the introduction of his statements explaining why he was invoking his Miranda rights, which ultimately served as the only direct, unimpeachable evidence implicating him as a knowing member of this conspiracy. Well, direct from his lips, but we've got the testimony of three of his accomplices who apparently the jury credited who fingered him as the driver. Did they not? It was direct evidence, but it was highly impeachable evidence. But you didn't succeed in impeachment. That's the point, Counsel. We have to view the facts in the light most favorable to the jury's verdict, and I'm sure, knowing able counsel from the Public Defender's Office, that you gave it your all at trial. We didn't represent him at trial. Oh, you got it now? Okay, trying to clean up the mess. I don't believe it's a mess, Your Honor. I believe he was – these witnesses were ably impeached, but the fact is the impeachment was – But the jury apparently believed it, notwithstanding the impeachment. That's my point. Because the impeachment was irrelevant because they had it from the defendant's own lips that he was responsible. If you don't have that, the impeachment has much, much more credibility. Isn't direct evidence testimony from a precipient witness that he or she saw the defendant commit the criminal act? Isn't that direct evidence? But these were three witnesses with intense motivation to implicate Mr. Possilwate in this conspiracy. You're arguing impeachment. I'm asking you a simple yes or no question. Isn't that direct evidence? That's why I said the only direct unimpeachable evidence. But, Your Honor – Okay. I mean, we can play some man against the answers. Yes, you and I both know it. It is direct evidence, but it's – Do you want to move on? Do you want to move on to another point? Sure. You don't need to take my word for the fact that this evidence was vital to the case against Mr. Possilwate. There are four different entities that don't have Mr. Possilwate's interest in mind that have said as much. The government, in closing argument, told the jury that this was the most important corroborating evidence against Mr. Possilwate. The district court, in analyzing Mr. Possilwate's 2255 petition, said the statements could have influenced the jury's verdict. The government, in their own brief in this case – Didn't the district court also describe the evidence against Mr. Possilwate as overwhelming? It did describe the evidence as overwhelming, but it also said – I think the words were – I would be charitably describing it as overwhelming. That's a pretty strong statement. That was the district court's opinion, but it also said the statements could have influenced the jury's verdict. The district court presided over the trial and heard the evidence, did he not? He did, but he also heard these statements that should not have been introduced. Well, what about all of the corroborating information, the border crossing, the surveillance video? The surveillance video did not implicate Mr. Possilwate at all. He was never seen on the video. It shows the truck coming and going, does it not? It shows a truck that may very well have been this truck. But at best, in that circumstance, what you have is a driver who works for someone else driving a truck with a secret compartment the day before these deliveries. There are any number of other defenses that could have been presented in that case, such as that Mr. Possilwate drove the truck and then somebody else drove it to the warehouse, or that Mr. Possilwate drove the truck to the warehouse and then left it and someone else unloaded it. He's a truck driver. What was the time link between the photo and the crossing? Two of the deliveries, it was the day before, and one, it was the day of the delivery. But the crossings were quite a ways east, were they not? Weren't they, the crossings were in remote parts of northeastern Washington, so it would take a while to get from there to here? In any event, though, it's a crossing that could be made easily in a day. Can you answer to my question, yes? Yes. You really need to address my questions. You're making a great argument, but please help us by answering the question. Yes, the crossings were a ways away, but they could easily have been made in a day. In any event, they don't implicate him as a knowing member of the conspiracy. It depends on what time he crossed. If he crossed in the late afternoon, then he might not be delivering his load until the next morning. He might not. But, again, that doesn't implicate him as a knowing member of the conspiracy. Someone, a truck driver could drive a truck to a warehouse and then leave it, and someone else unloads it. This very truck, someone else was apprehended driving this truck with money in the truck, in the secret compartment. The government let him go. How many crossings did the truck make in the course of the government investigation? The government only introduced three crossings. I thought I read somewhere in the record it was 30 to 40. One of the other witnesses said there were 30 deliveries, but the government only introduced evidence of three crossings. Corroborating evidence. It only introduced the border crossing records about the three crossings. Okay. But the cooperating accomplices testified that there were 30 to 40. They said there were 30 to 40, yes, Your Honor. Okay. But also you can look at the words of the government in their own brief in this case where they said that the testimony of Mr. Posseway was introduced to show consciousness of guilt, awareness that he was working with dangerous people, and to undermine its efforts to show that other witnesses had lied. So, yes, the jury may have believed the other witnesses. Frankly, it may not have. It might have said, I don't believe these guys at all, but we've got the words of Mr. Posseway from his own lips. I don't care what these guys said. Ultimately, if you don't have the words of Mr. Posseway. The argument that the jury could not have convicted on the basis of the other evidence or. That's not my argument at all, Your Honor. Your Honor, if the case here was just the evidence without Mr. Posseway and he had been convicted, we would not be here before Your Honor saying that this is sufficient to the evidence case, because I admit that the evidence could have been sufficient to convict him, but that is not the standard before this Court. There are many cases where this Court has decided that even if the evidence would be sufficient to convict someone absent the tainted evidence, that's not the standard for prejudice. The standard is whether there's a reasonable probability that but for counsel's unprofessional errors, the outcome of the trial would have been different. Whether there's a reasonable probability that one juror would have returned a different, would have viewed the evidence differently. If you look at this Court's decision in Coring, that's exactly what this Court said. If you look at this Court's decisions in Wiggins and Whedon, this Court said just one juror whose, your confidence in how they would have decided on this case is enough. And you just need to look at the words of the United States Supreme Court when talking about confessions, when they say that a confession is probably the most probative and damaging evidence that can be presented against the defendant. Mr. Posseway did not have a prayer in this case because he had the words out of his own lips implicating him in the conspiracy. There was a multitude of evidence to show that these co-conspirators, these alleged co-conspirators had a motive to lie, had fabricated their story, but that it didn't matter. The jury had no choice but to convict him because they had the words of his own mouth. They had, as the government described it, the most important corroborating evidence against him. Because of that, it's no other option than this Court to vacate Mr. Posseway's I reserve the remainder of my time for rebuttal. Thank you very much, Mr. Kennedy. Good morning, Your Honors. Teal Miller on behalf of the United States. The crossing was at Eastport, Idaho, in answer to your question. I knew that. The defendant's position here with regard to prejudice and with his position as to why there was a reasonable probability the jury wouldn't have convicted is that the witnesses, the three witnesses who gave direct evidence of his client's guilt might not have been believed but for his statements. That's not right because there's another witness whose testimony makes clear, or at least as to Mr. Bennett, one of the three co-conspirators, makes clear that it bolsters, it significantly bolsters his testimony. That's Agent Lassiter at the Supplemental Excerpts of Records at page 26. And she says that in July of 2011, that is before Mr. Posseway was indicted, before there was any public indication that the government was aware of who he was, Mr. Bennett said the driver's name is Jim and gave a physical description of Mr. Posseway. And then on page 27 of the Supplemental Excerpts of Records, Mr. Bennett described how the hidden trap in the white Hyundai trailer operated. That information was confirmed when the truck was eventually found. So in order to disbelieve Mr. Bennett, the jury would have also had to believe that Agent Lassiter was lying as to what he told her in March of 2011 before Mr. Posseway was implicated. He was, the government had the records showing that he'd crossed, but they didn't have any other information about him. So he had to be a very lucky cooperator if he thought, if I say Jim, he got very lucky in choosing that name. As Your Honors, questions suggest the evidence from between February and April that this truck came to the warehouse in Kent three times and that this truck was unmistakable. It was a red Volvo truck with a white Hyundai trailer. It had a BC license plate and the agents who looked at the license plate knew what two digits were and knew that a third digit was one or seven. And this truck came across the border three times about a day before warehouse was, marijuana was delivered at the warehouse and James Postelady was driving the truck. So what did, what did they do? Did they run one of those analytical programs? Yes. To fill in the missing digits? Yes. And then they matched it to the red Volvo truck? Yes. That's right. And they found a truck that was the same color, a trailer that was the same color and a plate that matched two and a half if you take the one or the seven as a half digit. I think it's more than that if you look at it as an issue of probability. In light of Agent Lassiter's testimony, Postelady's suggestion that the jury, we don't know whether the jury believed these three witnesses simply doesn't give rise to a reasonable probability that he wouldn't have been convicted if his statements hadn't been introduced. What was the physical description that this witness gave? Agent Lassiter doesn't say. She just says it was a physical description that was consistent with Mr. Postelady. Do we have a 302 that indicates what the description was? I don't know, Your Honor. I looked at that page and it's, yeah, you're right. That's the bare question was asked. Was the physical description consistent? But that's all it says. That's right, Your Honor. But he did say at that point Jim, and there was no reason he would know what the driver's name was, so he got awfully lucky if he was making it up in order to get a benefit from cooperation. Your Honor, I'd be happy to address our argument that performance wasn't deficient if you'd like to hear it. Otherwise, we'll ask that the judgment be affirmed. I'm good. Thank you. Your Honor, there's a very simple answer to the State's point, which is that they identified the driver as Jim. It would be very easy to nonetheless not convict Mr. Postelady if they identified him as the driver, because, again, he's a truck driver. He's sent to a warehouse. Just because he drove the truck to the warehouse, even if the jury believed that which, again, is a very bare-bones description with the most common name in America, but even if the jury did believe that he drove the truck to the warehouse and these guys knew him, that doesn't necessarily mean that he's a knowing member of the conspiracy. Well, he did. The compartment had a pretty sophisticated access system, did it not? It absolutely did. Okay, and so the three cooperators basically testified that Jim, or the driver, knew how to trigger the door, the trap door, whatever it was, to open the hidden compartment. They did. But, again, that's entirely dependent on believing them. They could have known how to access the compartment. The driver could not have known. I guess what bothers me about your argument is that in order to be convicted of treason,  Here we have three. Your Honor. and assuming that the jury credited their testimony and the government supplied all this corroborating information, it does seem that the district court correctly characterized the evidence as overwhelming. So trying to balance that against the harmful impact of the defendant's own words, I'm having a hard point reaching the conclusion you're urging us to reach, that there's no reasonable probability that the verdict would have been different. To Your Honor's point, again, the question is not whether there was sufficient evidence to convict. It's whether there's a reasonable probability that he would have – that the outcome would have been different. He may have been convicted without this. I thought I was – Well, I was responding to your point about two witnesses versus three witnesses, that, yes, it might have been enough, but we don't know that it was enough. The government themselves said it was the most important corroborating evidence against him. Well, I mean, the Supreme Court has made that same point, that the defendant's own words are always something that the jury wants to hear, which is one of the reasons why we have the Fifth Amendment and – Exactly. Right? But that doesn't necessarily answer the test that we apply in this circumstance, does it? But you had three witnesses, all of whom had profound incentive to implicate Mr. Possilway. They all got deals out of it. They all only – at least two of them only identified him after the possibility of a deal was broached. They all received benefit from cooperation. Well, what do we do about Mr. Bennett? Again, even if you believe everything that he said about that he knew the driver was Jim, that Mr. Possilway was the person that drove, it doesn't necessarily show that Mr. Possilway was a knowing member of the conspiracy. Look at how the government described it in their closing, where they said, are those the words of some dupe, some unwitting courier? The government was outlining what the defense would have been if they didn't have Mr. Possilway's own words. So there's clearly a reasonable probability the outcome would have been different. Do you know how detailed the description was given – that was given back in 2011? I do not. Okay. So I can only ask that this Court vacate the conviction and remand for further proceedings. Thank you. Okay. It's just argued as submitted. We will now hear argument in Pacific Boring Incorporated versus – is it Staheli? Is that how it's pronounced? Staheli. Staheli. Trenchless Consultants, Inc., and Kimberly Staheli Locke.
judges: O'scannlain, Tallman, Watford